REIGLE v REIGLE

Docket No. 122712. Submitted March 19, 1991, at Lansing. Decided
     May 20, 1991, at 9:40 A.M.

     Sally L. Reigle brought an action for divorce from James B.
     Reigle in the Genesee Circuit Court. Following trial, the court,
     Valdemar L. Washington, J., entered a judgment dividing the
     marital assets, awarding $717,543 to the plaintiff. The award
     consisted of $219,000 withdrawn by the plaintiff during the
     marriage from the defendant's stockbrokerage account without
     his consent, $226,341 in cash or stock from the defendant's
     holdings, and one-half of seven annual payments of $80,000
     payable to the parties under a contract with a third party. The
     defendant appealed from the judgment, and the parties stipu-
     lated to a stay of proceedings in the trial court. Under the
     stipulation, the plaintiff agreed not to undertake enforcement
     proceedings while the defendant's appeal was pending. The
     Court of Appeals, in an unpublished opinion per curiam, de-
     cided April 26, 1989 (Docket No. 105604), affirmed the judg-
     ment, holding that the property division was fair and equitable.
     The defendant complied with the judgment by transferring
     $226,341 in stock to the plaintiff and paying her two of the
     seven annual installments of $40,000. The plaintiff subse-
     quently moved for an award of interest on the payments made
     by the defendant and for reimbursement of additional taxes she
     incurred by receiving two annual installments of $40,000 in the
     same year. The trial court denied the motion. The plaintiff
     appealed.

     The Court of Appeals *held:*

     The trial court did not abuse its discretion in denying the
     plaintiff's request for interest, and it did not err in refusing to
     order the defendant to reimburse the plaintiff for additional
     taxes related to the annual payments.

     1. MCL 600.6013; MSA 27A.6013, which provides for interest
     on money judgments in civil actions, does not apply to money
     awards in divorce actions. Interest on money awards in divorce
     actions is granted solely pursuant to the equitable powers of

REFERENCES

Am Jur 2d, Divorce and Separation § 931.
See the Index to Annotations under Divorce and Separation.

the trial court, whose decision will not be reversed on appeal in the absence of an abuse of discretion. In this case, the trial court did not abuse its discretion in declining to award interest. The defendant's payments to the plaintiff were not overdue in view of the stipulation for a stay of proceedings, including enforcement proceedings. Even if the payments were overdue, an award of interest would grant a windfall to the plaintiff and upset the equitable balance of the property division because the defendant received no award for the amount of interest he lost as a result of the plaintiff's removal of the $219,000 from his stockbrokerage account.

2. The trial court fully considered the ramifications of its property division on the parties' individual tax liabilities. By seeking reimbursement of additional taxes incurred because of the receipt of two annual installments in the same year, the plaintiff essentially sought a modification of the divorce judgment. However, changes of circumstances after the entry of the divorce judgment, which would warrant such a modification, did not exist in this case.

Affirmed.

1. DIVORCE — PROPERTY DIVISION — JUDGMENTS — INTEREST.

The statute that provides for interest on money judgments in civil actions does not apply to money awards in divorce actions; interest on money awards in divorce actions is granted solely pursuant to the equitable powers of the court (MCL 600.6013; MSA 27A.6013).

2. DIVORCE — PROPERTY DIVISION — JUDGMENTS — INTEREST — APPEAL.

A trial court's discretionary and equitable award of interest on a money award in a divorce action is reviewed on appeal for an abuse of discretion.

*Charles J. Porter,* for the plaintiff.

*Spender & Robb, P.C.* (by *Steven F. Spender* and *Scott Stensaas*), for the defendant.

Before: HOOD, P.J., and JANSEN and G. S. AL-
LEN,* JJ.

G. S. ALLEN, J. On this, the third occasion on

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

which this matter has come before our Court,[1] we are asked to determine whether postjudgment interest is due on sums awarded to plaintiff in a judgment of divorce, the payment of which was delayed during defendant's appeal as of right to this Court. The question raised is of first impression in Michigan. Following a hearing on October 16, 1989, the trial court refused to award any postjudgment interest. Plaintiff appealed as of right.

The parties married on December 10, 1975. The marriage was the second for each. Both parties brought substantial assets into the marriage and each maintained separate bank accounts. Plaintiff's assets consisted largely of insurance proceeds resulting from the accidental death of her first husband in 1968. Defendant's assets consisted mainly of a successful and well-recognized funeral home business that was started by defendant's father in 1930.

In February 1986, while defendant was in Australia, plaintiff removed $219,000 from defendant's Merrill Lynch trust account. The removal was without defendant's consent or knowledge. Plaintiff also vacated the marital home, purchased a home of her own in Grand Blanc, and shortly thereafter instituted this suit for divorce.

A two-day trial was held in August 1987, and a final judgment of divorce was entered by the trial court on December 16, 1987. The judgment awarded plaintiff approximately $717,543 out of

[1] Defendant first sought leave to appeal before trial to determine the applicability of an antenuptial agreement as a defense. This Court denied defendant's application for leave on May 14, 1987 (Docket No. 99267). Following the December 16, 1987, entry of the divorce judgment, defendant appealed as of right to this Court from the judgment. This Court affirmed the judgment as fair and equitable in *Reigle v Reigle*, unpublished opinion per curiam of the Court of Appeals, decided April 26, 1989 (Docket No. 105604).

the marital estate, the principal components of which were the following:

f) One half of the right, title and interest in each of seven annual $80,000 payments which remain to be paid by Service Corporation International to the parties in consideration for a Non Compete Agreement executed by them at the time of the sale of the various Reigle business enterprises to Service Corporation International and such payments shall be made directly by Service Corporation International to the Plaintiff. Specifically, Service Corporation International shall each year for the next seven years beginning in the year 1988 forward to Plaintiff a check made out to her, individually, in the amount of $40,000, and shall furnish to her a separate 1099. *She shall, thereafter, be responsible for any and all taxes associated with receipt of that amount of money.*

g) all of the right, title and interest in and to the $219,000.00 taken by the Plaintiff when she left the marital home.

\* \* \*

h) cash or stock from any of Defendant's stock holdings so long as it is unencumbered unrestricted stock (as opposed to Rule 144 stock) and is readily marketable on any major exchange, *to be paid forthwith to Plaintiff* to represent her interest in the sale of the various Reigle enterprises in 1985 and this stock shall have a marketable value of $226,341 on the date of transfer. To that end if such monies are not paid in cash and such stocks as are to be transfered [sic] are physically held in a security account *the Defendant shall forthwith prepare whatever documents are required to initiate the transfer of those stocks into an account to be opened in the name of Sally Lou Reigle.* [Emphasis supplied.]

Fourteen days after entry of the judgment, defendant filed a claim of appeal in this Court. On February 18, 1988, the parties stipulated to a stay

of proceedings. In relevant part, the order granting the stay provided:

> 8. The parties are in dispute as to whether post judgment interest should be paid on the $40,000 annual payments, and the $226,341 of cash or stock. The parties agree that this issue shall be submitted to the appropriate Court for resolution at a later time.
>
> 9. Defendant shall diligently prosecute his appeal to effect, and shall perform and satisfy the judgment or order of the appellate court.
>
> 10. The parties agree that during the pendency of Defendant's appeal, Plaintiff will not undertake any enforcement proceedings relating to the Property Settlement or the Judgment of Divorce.

In an unpublished per curiam opinion, decided April 26, 1989 (Docket No. 105604), this Court found the property settlement fair and equitable:

> In this case, the parties had been married for ten years. Plaintiff was 50 years old at the time of trial and had no job skills. We conclude that the trial court's award to plaintiff of approximately $717,543 is fair and equitable in light of the length of the marriage, plaintiff's age and employability and the fact that defendant has well over $4,000,000 in remaining assets.

On May 22, 1989, defendant promptly paid plaintiff two $40,000 installments owed under the noncompetition agreement and transferred to plaintiff $226,341 in stock. Approximately four months later, plaintiff retained new legal counsel who, on September 29, 1989, filed a postappeal motion, seeking a postjudgment interest award of

$48,167.86[2] to compensate plaintiff for the lost use of the sums attributable to the 1988 and 1989 noncompetition installments and the stock transfer, the receipt of which was delayed as a result of defendant's appeal to this Court. She also sought to be reimbursed in the amount of $3,169 for additional tax liability incurred as a result of receiving both the 1988 and 1989 noncompetition installments in the same year rather than in their respective years.

At a hearing on plaintiff's motion held on October 16, 1989, the trial court denied plaintiff's request for both the postjudgment interest and the sum paid in additional taxes. The following exchange between the trial court and plaintiff's counsel reflects the court's rationale for denying plaintiff's motion:

> *The Court:* Then why should she get interest on it?
>
> *Mr. Porter:* Well, your Honor, the Court of Appeals in two cases has adopted the principle that if payments are overdue, interest . . . .
>
> *The Court:* That's where I have difficulty in accepting your position. There's nothing overdue about those payments. He's entitled to take a claim of appeal.
>
> *Mr. Porter:* Well, your Honor, that's true, but that appeal in, in essence means that my client did not get the money she was entitled to on the dates that this Court set. In other words, he has a right of appeal . . . .

---

[2] One year and 157 days elapsed between the date of judgment and the date defendant made payment of $226,341 in stock. Plaintiff computes interest at twelve percent for one year at $27,160.92 and for 157 days at $83.34 per day at $13,084.38 for a total of $40,245.30 One year and 112 days elapsed between the date of judgment and the date defendant paid the $40,000 noncompetition installment for 1988. Plaintiff computes interest on this amount at $6,449.76. Plaintiff computes interest on the 1989 noncompetitive installment at $1,472.80.

*The Court:* That's true in any case, sir.

*Mr. Porter:* That's, that's true, but I'm saying, your Honor, if a person takes. an appeal, that delays the payment. I think that under the principle . . . .

*The Court:* Do you have any other position to support yourself other than what I've read?

*Mr. Porter:* We're just relying on the two Court of Appeals cases, your Honor.[3]

*The Court:* And they make it discretionary, don't they[?]

*Mr. Porter:* That is correct.

*The Court:* Okay. Under these circumstances I don't think there was anything abusive, or I should say, I don't think under the circumstances once the Court of Appeals ruled, that would warrant the awarding of interest and I'm not going to do that within my discretion.

\* \* \*

*The Court:* As it relates to the taxes, that's her responsibility. I told your client and I told Mr. Spender's client in my judgment that the money did not have to be paid in cash. She received a substantial up-front payment, if you will, and the tax consequences are her responsibility.

\* \* \*

*The Court:* I think your client was perhaps made to wait a little longer than she would have liked, but she got her money, as well as the two hundred and nineteen thousand that was taken up-front.

Michigan case law clearly establishes that the statute governing interest on money judgments, MCL 600.6013; MSA 27A.6013, does not apply to judgments of divorce. In *Thomas v Thomas (On Remand),* 176 Mich App 90, 92; 439 NW2d 270 (1989), a panel of this Court observed:

Arriving at an appropriate interest factor is not

---

[3] *Lawrence v Lawrence,* 150 Mich App 29; 388 NW2d 291 (1986); *Saber v Saber,* 146 Mich App 108; 379 NW2d 478 (1985).

easy. In doing so we take special note that the "Interest on Money Judgment" statute, MCL 600.6013; MSA 27A.6013, does not apply to money awards in divorce actions, *Lawrence v Lawrence,* 150 Mich App 29; 388 NW2d 291 (1986), *Saber v Saber,* 146 Mich App 108; 379 NW2d 478 (1985), and *Ashbrenner v Ashbrenner,* 156 Mich App 373; 401 NW2d 373 (1986), and that interest on such awards is granted solely pursuant to the equitable powers of the court.

What is unclear, however, is the appropriate standard under which the trial court's decision is to be reviewed on appeal. Plaintiff, relying on *Ashbrenner, supra,* p 377, contends that the trial court's decision must be reviewed under the de novo standard. We disagree. If an award of interest in equity lies in the sound discretion of the trial court, *id.,* then we believe the court's decision should be reviewed for an abuse of that discretion.

In *Beason v Beason,* 435 Mich 791, 799-805; 460 NW2d 207 (1990), our Supreme Court rejected the de novo standard of review of the trial court's factual findings in divorce cases, employing instead the "clearly erroneous" standard:

> In summary, we hold that the factual findings of a trial court in a divorce case are to be reviewed for clear error. A finding is clearly erroneous if the appellate court, on all the evidence, is left with a definite and firm conviction that a mistake has been committed. While this standard gives the appellate judge more latitude than when reviewing a trial by jury, it does not authorize a reviewing court to substitute its judgment for that of the trial court; if the trial court's view of the evidence is plausible, the reviewing court may not reverse. [*Id.,* p 805.]

This jurist, a member of the Court of Appeals

panel in *Beason v Beason,* unpublished opinion per curiam, decided January 13, 1988 (Docket No. 98716) that, after review de novo, concluded it would have reached a different result, is not about to make the same mistake again. It is patently contradictory to state that a decision of the trial court is within its discretion and yet is subject to de novo review. Accordingly, we will review the trial court's decision for an abuse of discretion.

An application of this standard to the situation in the instant case leads us to conclude that the trial court did not abuse its discretion in declining to award interest.

A trial court does not compensate a party for loss in a divorce action, but rather seeks an equitable distribution of property. Accordingly, any interest award in a divorce action is not intended to serve the purpose of compensating a party for lost use of funds. *Saber, supra,* p 112, see also *Lawrence, supra,* p 32, n 1.

Here, "[p]laintiff requests 12% postjudgment interest for the delay caused by Defendant, and the resulting loss of use of said funds from the date payment was due." Because plaintiff seeks a form of interest not traditionally awardable in divorce actions, the trial court did not abuse its discretion in denying plaintiff's motion.

We are not convinced by the cases relied upon by plaintiff that our conclusion is erroneous. *Ashbrenner, supra,* pp 376-377, and *Lawrence, supra,* p 34, merely stand for the proposition that a trial court, exercising its equitable powers, may, in its discretion, award a party interest where the payments due on a property settlement are overdue. An award of interest under such circumstances prevents the delinquent party from realizing a windfall and assures prompt compliance with court orders. *Ashbrenner, supra,* p 377.

Here, plaintiff voluntarily agreed to stay proceedings and waived her right to undertake "enforcement proceedings relating to the Property Settlement." Defendant diligently prosecuted his appeal and promptly honored the terms of the judgment once an opinion adverse to his claim was rendered by this Court. On this record, we agree with the trial court's statement that "[t]here's nothing overdue about these payments." Accordingly, because the payments were not overdue, the trial court did not abuse its discretion in refusing plaintiff's request for an interest award under *Ashbrenner* and *Lawrence.*

However, even if we were to conclude that the payments were overdue, we still would conclude that no abuse of discretion occurred. As the trial court observed, plaintiff received $219,000 "up front" as a result of her unauthorized removal of those funds from defendant's trust account. Obviously, plaintiff had the use of the interest accruing on that sum from February 1986 and thereafter. To grant plaintiff's motion for interest under these circumstances would permit plaintiff to both reap a windfall and upset the equitable balance achieved by the property settlement. This we cannot allow. *Ashbrenner, supra,* p 377.

Finally, plaintiff misplaces her reliance on *Harden v Harden,* 191 Okla 698; 130 P2d 311 (1942), as authority for the proposition that, in divorce cases, postjudgment interest on property settlement payments should be awarded for delay caused by appeal. Plaintiff reads the law set forth in *Harden* too sanguinely.

In *Harden,* the former wife, in a postappeal action in the trial court, sought interest on alimony payments owed her by her former husband, which were due on a date certain and, because of

the appeals brought by both parties, were admittedly overdue. *Id.,* p 699. The trial court denied the interest request, but the Oklahoma Supreme Court reversed, concluding that the wife was indeed entitled to interest on the overdue alimony payments. *Id.,* p 702. *Harden* is inapposite in two material respects. First, the divorce judgment entered in *Harden* specifically allowed interest to accrue and be paid on any portion of the alimony payments "not paid within the time specified." *Id.,* p 699. In the case before us, the judgment of divorce is silent with regard to interest accrual. Second, the Oklahoma Supreme Court noted that "in this state, alimony decreed to a wife is as much a debt . . . as any judgment for money, and without a specific provision for interest past-due installments draw interest at the statutory rate." *Id.,* p 701. That is not the law in Michigan, at least with regard to property divisions. *Saber, supra,* p 112.

Accordingly, we conclude that the trial court did not abuse its discretion in denying plaintiff's motion for interest.

We also conclude that the trial court did not err in refusing to order defendant to reimburse plaintiff for a portion of her 1989 tax liability. The language of the divorce judgment indicates that the trial court considered the tax consequences of the property settlement in arriving at an equitable settlement and that it intended the parties to shoulder any tax burden that arose out of their respective portions of the settlement. By seeking reimbursement of a portion of her tax liability incurred in 1989, plaintiff seeks, in essence, to modify the divorce judgment. We find no change of circumstances after the entry of the judgment that justifies modification. *Yanz v Yanz,* 116 Mich App 574, 575-576; 323 NW2d 489 (1982).

Affirmed.